# Exhibit A

Thomas E. Wheeler (CA Bar #304191)
ENVIRONMENTAL PROTECTION INFORMATION CENTER
145 G Street, Suite A
Arcata, CA 95521
Tel: (707) 822-7711
tom@wildcalifornia.org

Sangye Ince-Johannsen, *pro hac vice*
WESTERN ENVIRONMENTAL LAW CENTER
120 Shelton McMurphey Boulevard, Suite 340
Eugene, Oregon 97401
Tel: (541) 778-6626
sangyeij@westernlaw.org

Peter M. K. Frost, *pro hac vice*
WESTERN ENVIRONMENTAL LAW CENTER
120 Shelton McMurphey Boulevard, Suite 340
Eugene, Oregon 97401
Tel: (541) 359-3238
frost@westernlaw.org

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL PROTECTION INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE,<br><br>Defendant,<br><br>and<br><br>SIERRA PACIFIC INDUSTRIES,<br><br>Defendant-Intervenor. | Case No. 2:23-cv-02611-KJN<br><br>**PLAINTIFF'S [PROPOSED] SUR-REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S REPLY MEMORANDA (ECF Nos. 55 & 56)** |

Introduction.

Pursuant to L.R. 230(m), the Environmental Protection Information Center (EPIC) files this sur-reply to address new arguments raised for the first time in the U.S. Fish and Wildlife Service's (FWS) and Sierra Pacific Industries' (SPI) respective reply briefs. ECF Nos. 55 (July 11, 2025) & 56 (July 18, 2025). FWS and SPI argue that EPIC is procedurally barred from challenging Conservation Measures 4 through 8 (CM4–CM8), asserting EPIC failed to provide notice in either its pre-litigation Notice of Intent (NOI), *see* ECF 55-1 at 3–13, its Complaint, ECF No. 1 (Nov. 9, 2023), or its opening Brief, ECF No. 40 (Dec. 4, 2024). These arguments mischaracterize both the law and the procedural history of this case.

Argument.

FWS's and SPI's assertion that EPIC is procedurally barred from challenging the Habitat Conservation Plan's (HCP) full suite of conservation measures, ECF Nos. 55 (FWS Reply) at 2–6 & 56 (SPI Reply) at 12–13, fails. EPIC's challenge is and has always been to the HCP in its entirety. Its NOI and Complaint put FWS on notice of this plan-wide claim by illustrating the HCP's systemic failures with specific examples. In its opening brief, EPIC focused on these primary deficiencies, while maintaining its challenge to the HCP as a whole. In response, FWS defended its decision by criticizing EPIC's focus and insisting the "full suite" of measures render the HCP lawful. *See* ECF No. 45 at 16–17 & 24.[1] EPIC's subsequent briefing on all eight conservation measures was a direct and necessary response to FWS's own defense. FWS cannot assert prejudice from debating an issue it raised. Further, its notice arguments rest on an ESA provision that does not apply to EPIC's challenge to the Biological Opinion under the APA.

I.  The Briefing History Shows EPIC's Arguments Were Proper and Caused No Prejudice.

FWS's assertion of "unfair surprise" is contradicted by the briefing sequence. The procedural history shows a logical progression in which EPIC's analysis of CM4–CM8 was a necessary and direct response to FWS's litigation strategy.

In its opening motion for summary judgment, EPIC demonstrated the HCP's failure to

---

[1] SPI likewise faulted EPIC for "flyspecking" individual measures. ECF No. 46 at 22.

meet the ESA's "maximum extent practicable" standard by focusing on the deficiencies of its three core conservation measures, CM1, CM2, and CM3. ECF No. 40 at 19–23. These measures form the backbone of the HCP's strategy for habitat, surveys, and salvage logging, and their failures are emblematic of the plan's illegality. In its cross-motion, FWS responded by criticizing this as an improper "piecemeal approach," and asserted its decision was lawful because the Court must evaluate the "full suite of conservation measures" working together. ECF No. 45 at 17, 24. Compelled by this defense, EPIC's combined reply and opposition brief responded to precisely what FWS invited: it analyzed the entire suite of conservation measures (CM1–CM8) to demonstrate why, even when considered together, the whole fails to satisfy the ESA. ECF 52 (EPIC Reply) at 6–21.

FWS's assertion of prejudice is baseless. EPIC discussed CM4–CM8 in its combined opposition and reply brief, giving FWS a full and fair opportunity to respond in its own reply brief. Indeed, FWS did respond: much of its reply brief is dedicated to a substantive defense of the entire conservation strategy, including the measures it now asserts are not at issue. *Cf.* FWS Reply 6–20. Having already argued the merits of CM4–CM8 in its reply, FWS cannot now seek a procedural escape hatch to get the last word on the merits while simultaneously depriving EPIC of the ability to have its rebuttal considered.

II.    The Complaint Provided Fair Notice of a Plan-Wide Challenge.

FWS's argument fails because it rests on a flawed reading of the Complaint and the standards of federal notice pleading. EPIC's claim has always been that the HCP as a whole is unlawful. Under FRCP 8(a)(2), a complaint must contain a "short and plain statement of the claim," sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Complaint is not required to plead every fact or instance that supports the overarching legal claim.

EPIC's Complaint surpasses this standard. Count One alleges that "*The HCP* does not minimize and mitigate the impacts of Incidental take to the maximum extent practicable." ECF No. 1 at 8 (emphasis added). This challenges the entire plan's compliance with 16 U.S.C. §

1539(a)(2)(B)(ii), *see* ECF No. 1 at ¶¶ 49 ("FWS's decision to approve the HCP violates the ESA") & 50 ("FWS's decision to approve the HCP is arbitrary, capricious, and not in accordance with law"). Similarly, Count Two alleges that "The BiOp unlawfully relies on conservation measures that are uncertain to occur or meaningfully address threats to the species." ECF No. 1 at 8. This challenges the jeopardy finding, which is predicated on the entire conservation program. The Complaint's specific allegations regarding CM1, CM2, and CM3 serve as illustrative examples of the plan's systemic failure, not as a limitation on the scope of the claim.

The cases FWS cites are inapposite because they concern plaintiffs raising entirely new causes of action at summary judgment.[2] EPIC has not done that. The claim remains what it was in the Complaint: the HCP and BiOp violate the law. EPIC's discussion of CM4–CM8 is factual support for that claim, offered in direct response to FWS's defense.

III.   FWS's Notice Arguments Are Meritless and Inapplicable to EPIC's Claims.

FWS's arguments regarding the NOI are incorrect as to EPIC's challenge to the HCP. But even if they were correct, they are irrelevant to EPIC's separate and distinct challenge to the Biological Opinion (BiOp) under the Administrative Procedure Act (APA).

A.   As to EPIC's Challenge to the HCP, the NOI Was Sufficient.

FWS's assertion that EPIC "failed to provide any notice of alleged deficiencies to CM4–CM8" is inaccurate. The NOI put FWS on notice of a systemic failure in the HCP's conservation strategy. The NOI states a broad, plan-wide challenge to the HCP's compliance with the ESA's requirement that the permittee "minimize and mitigate the impacts of such taking" "to the

---

[2] *See* FWS Reply 11 n.2. The cases FWS cites uniformly stand for the unremarkable proposition that a plaintiff cannot raise a new *legal theory* or *cause of action* for the first time in an opposition to summary judgment. *See, e.g., Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 n.5 (9th Cir. 1987) (declining to consider an unpleaded due process claim); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–94 (9th Cir. 2000) (barring a new disparate impact theory where only disparate treatment was pled); *Tunstall v. Beck*, 65 F.3d 176, at *2 (9th Cir. 1995) (declining to consider a theory of liability where the complaint contained "no allegation" to support it); *Polk v. Lucky Stores, Inc.*, 21 F. App'x 637, 638 (9th Cir. 2001) (refusing to consider a "claim" based on a new argument); *Clark v. United States*, 120 F.3d 268, at *1 n.2 (9th Cir. 1997) (same); *Rodriguez v. Ruyon*, 188 F.3d 514, n.3 (9th Cir. 1999) (same); *Moore v. Santa Anita Park, L.A. Turf Club, Inc.*, 852 F.2d 572, at *2 (9th Cir. 1988) (refusing to consider a duty of fair representation claim absent from the wrongful discharge complaint).

maximum extent practicable." The NOI's third section is titled: "The ITP and HCP are unlawful because Sierra Pacific Industries will not minimize and mitigate the impacts of incidental take to the maximum extent practicable." ECF No. 55-1 at 8. It then states: "Of the eight conservation measures ('CM') set forth in the HCP, *at least four* fail to meet this standard." *Id*. (emphasis added).

The purpose of the ESA's notice provision is to provide an agency with an opportunity "to review its actions and take corrective measures if warranted." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998). By flagging a plan-wide failure and providing specific examples, the NOI fulfilled this purpose. It alerted FWS to a systemic deficiency in the HCP and prompted a review of the adequacy of *all* the conservation measures, not only the three detailed as examples. An agency cannot reasonably read such a statement and conclude its review should be limited.

Even assuming, *arguendo*, that the NOI is deficient, the claim challenging the Section 10 permit approval can be properly reviewed under the APA, which has no notice requirement. FWS itself concedes "most district courts that have considered the issue have found that ESA Section 10 claims fall under the APA." FWS Reply 13 n.4. Indeed, the Supreme Court has clarified that when a plaintiff challenges a final agency action that allegedly misapplies the ESA—such as FWS's approval of a deficient HCP—the claim is reviewed under the APA. *Bennett v. Spear*, 520 U.S. 154, 174–75 (1997) (analyzing a claim pleaded under the ESA's citizen-suit provision and holding that a challenge to a BiOp was properly brought under the APA). Thus, any alleged defect in the NOI does not bar the Court's review.

B.      As to EPIC's Challenge to the BiOp, the NOI is Irrelevant.

Separate from the HCP claim, any alleged deficiency in the NOI is irrelevant to EPIC's challenge to the BiOp. FWS's notice argument rests entirely on the ESA's citizen-suit provision, 16 U.S.C. § 1540(g). But EPIC's challenge to the BiOp—including its reliance on the HCP's conservation measures—is a challenge to a final agency action governed by the APA. *See Bennett*, 520 U.S. at 175. The APA contains no 60-day pre-suit notice requirement.

In its cross-motion, FWS defended its BiOp's no-jeopardy determination by asserting that

the "full suite" of conservation measures justified its conclusion. ECF No. 45 at 24–25. EPIC was entitled to rebut this defense of its APA claim by demonstrating that all eight conservation measures were inadequate to support a no-jeopardy finding. FWS cannot invoke an ESA-specific notice requirement to preclude EPIC from fully responding to FWS's defense of its distinct BiOp-related APA violation.

Conclusion.

The Court should reject FWS's arguments and proceed to the merits.

Date: August 5, 2025.              Respectfully submitted,

/s/ Sangye Ince-Johannsen
Sangye Ince-Johannsen, *pro hac vice*
Peter M. K. Frost, *pro hac vice*
WESTERN ENVIRONMENTAL LAW CENTER
120 Shelton McMurphey Boulevard, Suite 340
Eugene, Oregon 97401
Tel: (541) 778-6626
sangyeij@westernlaw.org

/s/ Thomas E. Wheeler
Thomas E. Wheeler (he/him), CA Bar #304191
ENVIRONMENTAL PROTECTION INFORMATION CENTER
145 G Street, Suite A
Arcata, California 95521
Tel: (707) 822-7711
tom@wildcalifornia.org